## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANDREA DUNN, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>COUNTY OF WILL and MIKE KELLEY, Sheriff of Will County, individually and in his official capacity,<br><br>     Defendants. | No. 18-cv-06304<br><br>Honorable Robert M. Dow, Jr.<br><br>Honorable Young B. Kim<br><br>**Jury Demanded** |

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants, COUNTY OF WILL and MIKE KELLEY, Sheriff of Will County, individually and in his official capacity, by their attorneys, and for their Answer to the Plaintiff's Complaint state as follows:

1.     This is a class action pursuant to 42 U.S.C. § 1983 challenging Defendants' unconstitutional and inhumane system of holding pretrial detainees under Defendants' control.

**ANSWER:**  Defendants admit Plaintiff has filed this action in part pursuant to 42 U.S.C. § 1983 raising allegations regarding pretrial detentions at the Will County Adult Detention Facility ("ADF"), and that Plaintiff purports to bring this action on behalf of several classes of individuals. Defendants deny the remaining allegations of this paragraph.

2.     As explained in detail below, Defendants routinely hold those who have been arrested and awaiting probable-cause hearings for unconstitutional lengths of time under inhumane conditions. Defendants routinely hold persons at the Will County Adult Detention Facility ("WCADF") overnight in unsanitary concrete cells that provide no ability to sleep and deprive pretrial detainees of the ability to practice basic hygiene. Defendants also routinely hold pretrial detainees for over 48 hours with no legitimate basis to do so, violating established

1

constitutional norms. In fact, given the physical conditions Defendants impose upon these detainees, Defendants are violating the Fourth Amendment by holding these people over 24 hours and certainly over 36 hours.

**ANSWER:** Defendants deny the allegations of this paragraph.

3.      Plaintiff Andrea Dunn is a citizen of Illinois. She was arrested at or around 3:50 a.m. on Saturday, September 16, 2017, by Bolingbrook police officers, and detained at the WCADF, where she spent the next two nights, until she was finally released the following Monday evening. All charges were eventually dropped against Dunn.

**ANSWER:** Defendants admit that Plaintiff Andrea Dunn is a citizen of Illinois,

that she was detained at the ADF beginning on Saturday, September 16, 2017, and

that she was released on Monday, September 18, 2017. Defendants lack knowledge

or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph.

4.      Defendant County of Will is a local governmental entity within the State of Illinois, located in the Northern District of Illinois. At all relevant dates and times, Will County, in conjunction with the Will County Sheriff, operated, maintained, and managed the WCADF, and developed, instituted, and maintained written and unwritten policies and practices regarding the detention of arrestees awaiting probable cause determinations.

**ANSWER:** Defendants admit that Defendant County of Will is a local

governmental entity within the State of Illinois, located in the Northern District of

Illinois and deny the remaining allegations of this paragraph.

5.      Defendant Mike Kelley is the duly elected Sheriff of Will County. As the Sheriff, it is Kelley's duty in his official capacity, to operate the WCADF where Will County holds pretrial detainees after arrest and before probable cause hearings. As the Sheriff, Kelley is responsible for instituting policies and procedures that ensure the Will County Sheriff's office holds arrested persons and treats them in a manner consistent with the United States Constitution. He is being sued in his official capacity and personally in his individual capacity.

**ANSWER:** Defendants admit that Mike Kelley is the duly elected Sheriff of Will County and admit he is being sued in his official and individual capacities. Defendants also admit the Sheriff's Office operates and manages the ADF, where pre-trial detainees are held until their probable cause hearings. Defendants deny all remaining allegations of this paragraph.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). Defendants are physically situated in this judicial district, and the events giving rise to the claims in this case all occurred here. The Court has supplemental jurisdiction over the state law claims here under 28 U.S.C. § 1367.

**ANSWER:** Defendants admit that this Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331, that venue is proper under 28 U.S.C. § 1391(b), that Defendants are physically situated in this judicial district, and that Plaintiff has alleged that events giving rise to her claims occurred here in this district. Defendants admit that the Court may exercise supplemental jurisdiction over the state law claims here under 28 U.S.C. § 1367 but deny it should do so.

## FACTS

7.     On September 16, 2017, around 3:50 a.m., Plaintiff Andrea Dunn was arrested by Bolingbrook police officers without an arrest warrant. The officers initially took Dunn to a Bolingbrook police station where she was processed and searched. This procedure took approximately thirty minutes once she arrived at the police station. She was then transferred to the WCADF.

**ANSWER:** Defendants admit Plaintiff was arrested by Bolingbrook police officers without an arrest warrant on September 16, 2017, and she was transferred to the

ADF. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

8.     Dunn arrived at the WCADF around 5:00 a.m., and was officially booked at or around 5:19 a.m. She was again processed, again searched, and then placed in a holding cell that held four other women.

**ANSWER:**  Defendants admit Plaintiff arrived at the  ADF at 5:19 a.m., and that she underwent a booking process and was detained in a holding cell. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of women detained with Plaintiff at all times, and deny any remaining allegations of this paragraph.

9.     Dunn and the other women were held in the same cell from the time Dunn was placed there until Monday evening, when she and the other women were finally released. During the day on Saturday, another woman was placed in the cell who had been booked that day, occupied the cell for a few hours, and then was taken to a probable-cause hearing the same day.

**ANSWER:**  Defendants deny the allegation that Plaintiff and the other women were held in the same cell from the time Plaintiff was placed there until Monday evening, when she and the other women were finally released. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

10.     Dunn's holding cell measured approximately 6' wide by 15' long. The floor of the cell was made of concrete. An L-shaped concrete bench ran along part of one long wall and the short wall, ending on the long wall in an exposed toilet. A short wall approximately three feet tall was the only privacy allowed those using the toilet, so that those using it could be seen by the women in the cell and out the windows of the cell that faced a large common area populated by both male and female detention facility personnel.

4

**ANSWER:** Defendants admit the floor of the cell was made of concrete. Defendants admit an L-shaped concrete bench ran along part of one long wall and the short wall, ending on the long wall. Defendants admit the toilet in the cell was separated from the rest of the cell by a wall approximately three feet tall. Defendants admit that other detainees in the cell could observe the head and shoulders of a detainee using the toilet. Defendants admit that a person outside of the cell could look through a glass window into the cell and see the head and shoulders of a detainee who was using the toilet. Defendants deny the remaining allegations of this paragraph.

11. Dunn and her four fellow detainees were not brought to any probable cause hearing on the Saturday they were admitted, or the Sunday after. All five women were finally taken to a probable cause hearing on Monday afternoon, over 48 hours after each was admitted and processed at the WCADF.

**ANSWER:** Defendants admit there was a probable cause on Saturday and admit Plaintiff was not brought to that hearing in accordance with Circuit Court directives. Defendants admit Plaintiff was not brought to a probable cause hearing on Sunday because the Circuit Court for the Twelfth Judicial Circuit does not conduct such hearings on Sunday. Defendants admit Plaintiff was brought to the first available probable cause hearing, on Monday, September 18, 2017. Defendants admit this probable cause hearing took place more than 48 hours after Plaintiff was admitted to the ADF. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

12. For probable-cause hearings, the WCADF utilizes a videoconferencing system with a Will County judge. These videoconferences take place in a separate room within the detention facility.

**ANSWER:**   Defendants admit the allegations of this paragraph.

13.   At no time during Dunn's over-48-hour detention was Dunn provided a toothbrush or toothpaste.

**ANSWER:**   Defendants admit the allegations of this paragraph.

14.   At no time during Dunn's over-48-hour detention was Dunn given the opportunity to take a shower. No soap was provided in the cell at any time.

**ANSWER:**   Defendants admit the allegations of this paragraph.

15.   At no time during Dunn's over-48-hour detention was she ever given the opportunity to urinate or defecate in a private bathroom. At all times, Dunn was required to urinate or defecate in the holding cell in the presence of four other women. The cell had windows, and detention personnel including men could see into Dunn's holding cell and see a woman using the toilet if he were to walk by. The toilet was only cleaned one time between Dunn's time of admittance and her release from the detention facility.

**ANSWER:**   Defendants admit the toilet in the holding cell was separated from the rest of the cell by a three-foot privacy wall. Defendants also admit that other detainees in the cell could observe the head and shoulders of a detainee using the toilet, and a person outside of the cell could look through a glass window into the cell and see the head and shoulders of a detainee who was using the toilet. Defendants lack knowledge or information sufficient to form a belief as to the allegations regarding the number of women in the cell with Plaintiff and the number of times the cell was cleaned. Defendants deny the remaining allegations of this paragraph.

16.   At no time during Dunn's over-48-hour detention were Dunn or any of her cellmates given a mattress, pillow, or sheets with which to sleep.

6

**ANSWER:** Defendants state that Plaintiff and any other persons in her cell were provided blankets, but admit they were not provided mattresses, pillows or sheets.

17.    The only place in which Dunn or any of her cellmates were allowed to attempt to sleep was in the holding cell. As a result, Dunn attempted to sleep on the concrete floor and the concrete bench. These attempts were unsuccessful. As a result, Dunn was required to attend her probable cause hearing on Monday afternoon after being deprived of sleep for over 72 hours.

**ANSWER:** Defendants admit the only place in which Plaintiff or any of her cellmates were allowed to sleep was in the holding cell. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

18.    Given the size of the holding cell, only three persons could sit on the concrete bench at a time, or two people could lay down on it. All other persons had to either sit, stand, or lie on the concrete floor.

**ANSWER:** Defendants deny the allegations of this paragraph.

19.    During Dunn's over-48-hour detention, edible food was not available. One holding cell mate of Dunn's suffered violent diarrhea from the food she was provided and had to defecate in the corner toilet in front of her holding cell mates while the others were forced to listen and smell the results. This sickened Dunn and scared her from eating any of the food.

**ANSWER:** Defendants deny the allegation that edible food was not available. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

20.    The sheriff's officers cleaned the holding cell only once during Dunn's detention. During the first such cleaning, Dunn requested a sanitary napkin, and the male officer threateningly told Dunn to "sit the fuck down and shut the fuck up."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the cleaning of the cell. Defendants deny the remaining allegations of this paragraph.

21.     Dunn and the other women in the holding cell were not provided water in between meals, and had to drink their water out of the sink in the holding cell, located directly next to the exposed toilet.

**ANSWER:** Defendants deny the allegations of this paragraph.

22.     Dunn saw two other holding cells during her time at the detention center. None of those cells was equipped with bedding or private toilets, either.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

23.     One of the other women in Dunn's holding cell had been in the cell for 5 days and had not been provided a shower or toothbrush during her entire detention. That woman was told she was not admitted into the county facility, and so was not allowed to shower or brush her teeth.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

24.     Dunn was finally released on the Monday evening following her Saturday morning arrest. Her probable cause hearing, conducted by videoconference from the WCADF, occurred on or after 1:30 p.m., over 57 hours from the time of her arrest, over 56 hours from the time she arrived at the WCADF, and over 55 hours from the time she was officially processed at the WCADF. The charges against Dunn were ultimately dismissed.

**ANSWER:** Defendants admit Plaintiff was released from the ADF on Monday, September 18, 2017. Defendants admit Plaintiff's probable cause hearing, conducted by videoconference from the ADF, occurred at or about 1:30 p.m. on Monday, September 18, 2017, which was the first available hearing for her. Defendants admit that hearing was over 55 hours from the time Plaintiff arrived at the ADF.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the eventual dismissal of the charges against Plaintiff, and deny the remaining allegations of this paragraph.

25.    Dunn's experience was not unique. Dunn personally witnessed four other detainees while detained at the WCADF. All other detainees were denied adequate provisions and beds on which to sleep, adequate food, and adequate water. All other detainees were denied adequate access to sanitation and hygiene, including toothbrushes and toothpaste. All other detainees in her cell (except the one who came and left on Saturday) were denied a probable cause hearing until they had been detained over 48 hours.

**ANSWER:**  Defendants deny any detainees were denied adequate provisions, adequate food, adequate water, or adequate access to sanitation and hygiene. Defendants admit detainees are not provided with beds. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

26.    Between conversations overheard between detention facility personnel, personal interactions with those personnel, discussions among her fellow cell mates, and viewing the physical facilities at the detention center, Dunn reasonably believes the conditions she faced while being detained were normal and routine for those held after arrest and prior to a probable cause hearing at the Will County Detention Facility.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## CLASS ALLEGATIONS

27.    The Plaintiff seeks to pursue claims both for herself and for a class of others similarly situated. Plaintiff believes that the class should be organized into four subclasses.

**ANSWER:**  Defendants admit Plaintiff seeks to pursue claims both for herself and for a class of others allegedly similarly situated and seeks to have the class

organized into four subclasses, but denies any such claims are valid and denies that certification of such classes or subclasses is permissible.

28.     A sizeable percentage of persons arrested and admitted to the WCADF are detained overnight between the hours of 10:00 p.m. and 6:00 a.m., since persons arrested in the afternoon are rarely if ever taken to court until the following morning.

**ANSWER:**  Defendants admit only that several persons arrested and admitted to the ADF are detained between the hours of 10:00 p.m. and 6:00 a.m. and denies the remaining allegations of this paragraph.

29.     On information and belief, Will County provides no probable cause hearings at night or on Sundays. As a result, a percentage of persons arrested Friday night or Saturday morning and detained but not processed in time for the Saturday probable cause hearings are held over 48 hours before receiving a probable cause hearing. Due to Defendants' policies and procedures, any person arrested in Will County on a Saturday, and not processed in time for the Saturday hearings (after the probable cause hearings are held), will be held over 40 hours without a probable cause hearing.

**ANSWER:**  Defendants deny that Will County provides probable cause hearings at all, whether during weekdays, at night or on weekends. Such hearings are held by the Circuit Court for the Twelfth Judicial Circuit subject to its policies and procedures. In accordance with Circuit Court directives, persons admitted to the ADF after 5:00 a.m. on Saturday are not placed on the court call for the Saturday probable cause hearing. Defendants deny the remaining allegations of this paragraph because nothing alleged is due to Defendants' policies and procedures.

30.     Defendants maintain no policy, directive, or procedure (or have inadequate ones) requiring the provision of minimally appropriate sleeping accommodations to detainees awaiting a probable cause hearing, including the provision of sheets, mattresses, or pillows. The Defendants in fact neither maintain nor provide any such items for pretrial detainees awaiting probable cause hearings.

**ANSWER:** Defendants deny the Sheriff's Office has no policy, directive, or procedure (or has inadequate ones) for providing minimally appropriate sleeping accommodations to detainees awaiting a probable cause hearing. Defendants admit the County has no such policies or procedures concerning the operation of the ADF. Defendants deny that sheets, mattresses, or pillows constitute minimally appropriate sleeping accommodations. Defendants admit they do not as a matter of course provide mattresses, pillows or sheets to pretrial detainees awaiting probable cause hearings. Defendants deny any remaining allegations of this paragraph.

31.    Defendants maintain no policy, directive, or procedure (or have inadequate ones) requiring the provision of minimally appropriate hygiene, including the provision of sanitary napkins, toothbrushes or toothpaste, the availability of showers, soap, or privacy while urinating or defecating, to those in its custody awaiting a probable cause hearing. Defendants in fact neither maintain nor provide these tools of basic hygiene to their detainees awaiting a probable cause hearing. As a result of the failures in this and the preceding paragraph, Defendants have a de facto policy of actively depriving these detainees of even minimal features of a civilized society.

**ANSWER:** Defendants deny the Sheriff's Office has no policy, directive, or procedure (or has inadequate ones) for providing minimally appropriate hygiene to those in its custody awaiting a probable cause hearing. Defendants admit the County does not maintain policies or procedures related to the operation of the ADF. Defendants deny the provision of sanitary napkins, toothbrushes or toothpaste, the availability of showers, soap, and complete privacy while urinating or defecating constitute minimally appropriate hygiene. Defendants deny the ADF never provides these tools to detainees awaiting a probable cause hearing. Defendants deny the remaining allegations of this paragraph.

## Proposed Class I-detainees held overnight

32. Named Plaintiff Dunn seeks to represent subclass 1. Class 1 consists of:

All detainees awaiting probable cause determinations detained in the WCADF overnight at any time.

**ANSWER:** Defendants admit Plaintiff seeks to represent such a class, but deny that such a class is properly defined, subject to certification, or entitled to any requested relief.

33. The individuals in Class 1 are so numerous that joinder of all members is impractical.

**ANSWER:** Defendants deny the allegations of this paragraph.

34. These are questions of law and fact common to the claims of Class 1. Among these common questions are:

a. Whether it is unconstitutional or in violation of state law to hold detainees awaiting probable cause determinations overnight without furnishing them mattresses, sheets, or pillows;

b. Whether it is unconstitutional or in violation of state law to hold detainees awaiting probable cause determinations overnight without providing sanitary napkins;

c. Whether it is unconstitutional or a violation of state law to hold detainees awaiting probable cause determinations overnight without providing them soap, or the ability to shower or bathe;

d. Whether it is unconstitutional or a violation of state law to hold detainees awaiting probable cause determinations overnight without providing toothbrushes or toothpaste Whether it is unconstitutional or a violation of state law to hold detainees awaiting probable cause determinations overnight without providing toothbrushes or toothpaste;

e. Whether it is unconstitutional or a violation of state law to hold multiple detainees awaiting probable cause determinations in a

holding cell with no access to a private toilet and no access to soap to wash one's hands after using the toilet;

f.  Whether Defendants' policies allows and/or encourages the alleged constitutional and state-law violations;

g.  Whether there is a custom or practice within the Defendants' system that allows and/or encourages the alleged constitutional and state-law violations; and

h.  Whether Defendants' final policymakers have condoned or have been deliberately indifferent to the alleged constitutional and state-law violations

**ANSWER:**  Defendants deny the allegations of this paragraph.

35.  Plaintiff's claims are typical of the claims of Class 1. Dunn was detained over two nights in a holding cell at the WCADF. During that entire time, she received no accommodations for sleeping, no toothbrush or toothpaste, was denied sanitary napkins for an unreasonable length of time, was denied the ability to shower or bathe or use soap, and was denied any privacy in the use of the toilet. Plaintiff seeks to prove that the deprivations she suffered were inflicted as a result of Defendants' policies and/or customs and practices.

**ANSWER:**  Defendants admit Plaintiff was detained at the ADF from sometime after 5:00 a.m. on September 16, 2017 and released on September 18, 2017, did not receive a toothbrush, toothpaste or soap and that she did not shower while at the ADF. Defendants deny the remaining allegations of this paragraph.

36.  The Plaintiff will fairly and adequately represent the interests of Class 1. Plaintiff has retained skilled counsel, namely Heffner Hurst, with experience in constitutional and class action litigation to represent the Class, along with Hale Law LLC, which has extensive experience in constitutional and civil rights litigation.

**ANSWER:**  Defendants deny the allegations of this paragraph.

37.  The questions of law and fact common to Class 1 predominate over any individual issues.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## **Proposed Class 2-detainees held over 48 hours**

38.    Plaintiff also seeks to represent Class 2. Class 2 consists of:

All persons arrested without an arrest warrant and detained by Defendants in excess of 48 hours without a judicial determination of probable cause:

**ANSWER:**  Defendants admit Plaintiff seeks to represent such a class, but deny that such a class is properly defined, subject to certification, or entitled to any requested relief.

39.    The individuals in Class 2 are so numerous that joinder of all members is impractical.

**ANSWER:**  Defendants deny the allegations of this paragraph.

40.    There are questions of law and fact common to the claims of Class 2. Among these common questions are:

   a.  Whether it violates the constitution to detain warrantless arrestees in excess of 48 hours before presenting the detainee to a magistrate for a probable cause hearing;

   b.  Whether it violates state law to detain warrantless arrestees in excess of 48 hours before presenting the detainee to a magistrate for a probable cause hearing;

   c.  Whether Defendants maintained a policy, custom and/or widespread practice allowing the detention of warrantless arrestees in excess of 48 hours before presenting the detainee to a magistrate for a probable cause hearing;

   d.  Whether Defendants maintain a custom and/or widespread practice allowing the detention of warrantless arrestees in excess of 48 hours before presenting the detainee to a magistrate for a probable cause hearing; and

   e.  Whether Defendants' officials have been deliberately indifferent to the need for training, enforcement, discipline, and/or policy changes regarding the length of detention of arrestees in the absence of a judicial determination of probable cause.

14

**ANSWER:** Defendants deny the allegations of this paragraph.

41. [Omitted from Complaint]

42. Plaintiff's claims are typical of the claims Class 2. The named Plaintiff was detained by Defendants in excess of 48 hours without receiving a judicial determination of probable cause. The named Plaintiff seeks to prove that the deprivations she suffered were inflicted as a result of Defendants' policy, custom, practice and/or the deliberate indifference of Defendants' policymakers.

**ANSWER:** Defendants admit Plaintiff was detained at the ADF for more than 48 hours prior to her probable cause hearing. Defendants deny the remaining allegations of this paragraph.

43. Plaintiff will fairly and adequately represent the interests of Class 2. Plaintiff has retained skilled counsel, namely Heffner Hurst, with experience in constitutional and class action litigation to represent the Class, along with Hale Law LLC, who has extensive experience in constitutional and civil rights litigation.

**ANSWER:** Defendants deny the allegations of this paragraph.

44. The questions of law and fact common to Class 2 predominate over any individual issues.

**ANSWER:** Defendants deny the allegations of this paragraph.

**Proposed Class 3-detainees held over 36 hours**

45. Named Plaintiff Dunn seeks to represent Class 3. Class 3 consists of:

All persons arrested without an arrest warrant and detained by Defendants for a total time in excess of 36 hours without a judicial determination of probable cause.

**ANSWER:** Defendants admit Plaintiff seeks to represent such a class, but deny that such a class is properly defined, subject to certification, or entitled to any requested relief.

15

46.     The individuals in Class 3 are so numerous that joinder of all members is impractical.

**ANSWER:**     Defendants deny the allegations of this paragraph.

47.     These are questions of law and fact common to the claims of Class 3. Among these common questions are:

     a.  Whether it violates the constitution or state law to detain warrantless arrestees in the particular physical conditions found in WCADF holding cells in excess of 36 hours without obtaining judicial approval of probable cause for the detention;

     b.  Whether it violates the constitution or state law to detain warrantless arrestees in excess of 36 hours without obtaining judicial determination of probable cause; and

     c.  Whether Defendants maintained a policy, custom and/or widespread practice allowing the detention of warrantless arrestees in excess of 36 hours without obtaining a judicial determination of probable cause for the detention.

**ANSWER:**     Defendants deny the allegations of this paragraph.

48.     Plaintiff's claims are typical of the claims of Class 3. Dunn was detained over two nights in a holding cell at the Will County Adult Detention Facility. During that entire time, she received no accommodations for sleeping, no toothbrush or toothpaste, was denied sanitary napkins for an unreasonable length of time, was denied the ability to shower or bathe or use soap, and was denied any privacy in the use of the toilet.

**ANSWER:**     Defendants admit Plaintiff was detained at the ADF from sometime after 5:00 a.m. on September 16, 2017 and released on September 18, 2017, did not receive a toothbrush, toothpaste or soap and that she did not shower while at the ADF. Defendants deny the remaining allegations of this paragraph.

49.     Plaintiff will fairly and adequately represent the interests of Class 3. Plaintiff has retained skilled counsel, namely Heffner Hurst, with experience in constitutional and class action litigation to represent the Class, along with Hale Law LLC, who has extensive experience in constitutional and civil rights litigation.

**ANSWER:**   Defendants deny the allegations of this paragraph.

50.   The questions of law and fact common to Class 3 predominate over any individual issues.

**ANSWER:**   Defendants deny the allegations of this paragraph.

### Proposed Class 4-detainees held over 24 hours

51.   Named Plaintiff Dunn seeks to represent Class 4. Class 4 consists of:

All persons arrested without an arrest warrant and detained by Defendants for a total time in excess of 24 hours without a judicial determination of probable cause.

**ANSWER:**   Defendants admit Plaintiff seeks to represent such a class, but deny that such a class is properly defined, subject to certification, or entitled to any requested relief.

52.   The individuals in Class 4 are so numerous that joinder of all members is impractical.

**ANSWER:**   Defendants deny the allegations of this paragraph.

53.   These are questions of law and fact common to the claims of Class 4. Among these common questions are:

a.   Whether it violates the constitution or state law to detain warrantless arrestees in the particular physical conditions found in WCADF holding cells in excess of 24 hours without obtaining judicial approval of probable cause for the detention

b.   Whether it violates the constitution or state law to detain warrantless arrestees in excess of 24 hours without obtaining judicial approval of probable cause; and

c.   Whether Defendants maintained a policy, custom and/or widespread practice allowing the detention of warrantless arrestees in excess of 24 hours without obtaining a judicial determination of probable cause for the detention

**ANSWER:**   Defendants deny the allegations of this paragraph.

17

54.     Plaintiff's claims are typical of the claims of Class 4. Dunn was detained over two nights in a holding cell at the Will County Adult Detention Facility. The first night was a Friday night/early Saturday morning, and she was held all day Saturday and Sunday. During that entire time, she received no accommodations for sleeping, no toothbrush or toothpaste, was denied sanitary napkins for an unreasonable length of time, was denied the ability to shower or bathe or use soap, and was denied any privacy in the use of the toilet.

**ANSWER:**   Defendants admit Plaintiff was detained at the ADF from sometime

after 5:00 a.m. on September 16, 2017 and released on September 18, 2017, did not

receive a toothbrush, toothpaste or soap and that she did not shower while at the

ADF. Defendants deny the remaining allegations of this paragraph.

55.     The Plaintiff will fairly and adequately represent the interests of Class 4. Plaintiff has retained skilled counsel, namely Heffner Hurst, with experience in constitutional and class action litigation to represent the Class, along with Hale Law LLC, who has extensive experience in constitutional and civil rights litigation.

**ANSWER:**   Defendants deny the allegations of this paragraph.

56.     The questions of law and fact common to Class 4 predominate over any individual issues.

**ANSWER:**   Defendants deny the allegations of this paragraph.

### LEGAL CLAIMS

### Count I – 42 U.S.C. § 1983
### Claim for Deprivation of Reasonable Conditions of Confinement
### on Behalf of Class 1

57.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

**ANSWER:**   Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

58.     Plaintiff Dunn and the other members of the Class 1 were detained in Defendants' facilities overnight and were not furnished minimally adequate

conditions of confinement as required by federal constitutional and state law. The specific conditions of confinement complained of here include: lack of bedding and adequate sleeping conditions, lack of showers, lack of soap for basic personal hygiene, lack of toothpaste and tooth brushes, lack of private toilets, lack of sanitary conditions, lack of access to sanitary napkins for female detainees, lack of nutritional or edible meals, and lack of adequate drinking water.

**ANSWER:** Defendants admit Plaintiff was detained at the ADF overnight, did not

receive a toothbrush, toothpaste or soap, and that she did not shower while at the

ADF. Defendants deny the remaining allegations of this paragraph.

59.    Defendants violated the Fourth Amendment with each of the complained of conditions of confinement because each one is unreasonable. In addition, all of the conditions together amount to unreasonable conditions of confinement under the Fourth Amendment even if each individual condition, by itself, would not be unreasonable.

**ANSWER:** Defendants deny the allegations of this paragraph.

60.    Defendants caused this deprivation of rights and are liable for Plaintiff and the Class Members' damages, inter alia, because Defendants maintain unconstitutional policies, customs, and widespread practices that caused these violations. Moreover, Defendants fail to adequately train and discipline its officers in a manner that causes such violations. Further, Defendants have been deliberately indifferent to the need for different policies, training, and discipline. Also, Defendants have failed to act to remedy the patterns of misconduct described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

**ANSWER:** Defendants deny the allegations of this paragraph.

### Count II – 42 U.S.C. § 1983
### Claim for Excessive Detention Over 48 Hours for Class 2

61.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

**ANSWER:** Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

62.    Plaintiff Dunn and the other members of the Class 2 have been detained in Defendants' facilities for over 48 hours after a warrantless arrest without a judicial determination of probable cause.

**ANSWER:**  Defendants admit Plaintiff was detained at the ADF for over 48 hours

prior to her probable cause hearing. Defendants deny the remaining allegations of

this Paragraph.

63.    Defendants caused this deprivation of rights and are liable for Plaintiff and the Class Members' damages, inter alia, because the Defendants maintain unconstitutional policies, customs and widespread practices that caused these violations. Moreover, Defendants fail to adequately train and discipline its officers in a manner that causes such violations. Further, Defendants have been deliberately indifferent to the need for different policies, training, and discipline. Also, Defendants have failed to act to remedy the patterns of misconduct described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

**ANSWER:**  Defendants deny the allegations of this paragraph.

64.    Plaintiff Dunn and the other members of Class 2 have suffered damages as a result.

**ANSWER:**  Defendants deny the allegations of this paragraph.

### Count III – 42 U.S.C. § 1983
### Claim for excessive detention over 36 hours for Class 3

65.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

**ANSWER:**  Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

66.    Plaintiff Dunn and the other members of Class 3 have been detained in Defendants' facilities for over 24 hours after a warrantless arrest without a judicial determination of probable cause.

**ANSWER:**  Defendants admit Plaintiff was detained at the ADF for more than 24

hours prior to her probable cause hearing.

20

67.     Given the conditions of confinement complained of herein and the advances in technology since the 48-hour rule was initially established in 1991, it is unreasonable under the Fourth Amendment for Defendants to wait any longer than 36 hours to bring detainees before a judge for a probable cause determination, even where the entity combines multiple processes at the initial court appearance.

**ANSWER:**   Defendants deny the allegations of this paragraph.

68.     It is also unreasonable under the Fourth Amendment for Defendants to fail to hold probable cause hearings on Sundays, causing unnecessary and unreasonable detention of people arrested without a warrant.

**ANSWER:**   Defendants deny the allegations of this paragraph.

69.     Defendants caused this deprivation of rights and are liable for Plaintiff and the Class Members' damages, inter alia, because Defendants maintain unconstitutional policies, customs, and widespread practices that caused these violations. Moreover, Defendants fail to adequately train and discipline its officers in a manner that causes such violations. Further, Defendants have been deliberately indifferent to the need for different policies, training, and discipline. Also, Defendants have failed to act to remedy the patterns of misconduct described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

**ANSWER:**   Defendants deny the allegations of this paragraph.

70.     Plaintiff Dunn and the other members of Class 3 have suffered damages as a result.

**ANSWER:**   Defendants deny the allegations of this paragraph.

## Count IV – 42 U.S.C. § 1983
## Supervisory Liability against Defendant Kelley in his Individual Capacity

71.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

**ANSWER:**   Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

72.     Defendant Mike Kelley knew, or should have known, that detainees awaiting probable cause determinations in the WCADF were and are routinely denied reasonable sleeping accommodations and reasonable sanitary provisions, as

discussed above, and that such detainees were and are routinely detained for unconstitutional lengths of time prior to receiving probable cause determinations.

**ANSWER:**  Defendants deny the allegations of this paragraph.

73.    Despite this knowledge, Defendant Kelley failed to take measures to correct the constitutional violations enumerated herein.

**ANSWER:**  Defendants deny the allegations of this paragraph.

74.    Defendant Kelley actively participated in the creation, development, implementation, and maintenance of the policies and practices that resulted in the constitutional violations enumerated herein.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## Count V – State Law Claim
## Willful and Wanton Claim-Excessive Detention

75.    Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

**ANSWER:**  Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

76.    In detaining Plaintiff Dunn and the members of Classes 1-3 for the lengths of time set forth in the preceding paragraphs, and in initiating, developing, implementing and maintaining the policies and practices set forth in the preceding paragraphs, Defendants acted willfully and wantonly.

**ANSWER:**  Defendants deny the allegations of this paragraph.

## Count VI – State Law Claim
## Willful and Wanton Claim-Conditions of Confinement

77.    Plaintiff realleges each of the forgoing paragraphs as if fully stated herein.

**ANSWER:**  Defendants restate their answers to each of the foregoing paragraphs

as if fully stated herein.

78.     In denying Plaintiff Dunn and the members of Classes 1-3 the minimal requirements of civilized life, such as toothbrushes and toothpaste, soap, a private toilet, the ability to bathe and shower, fresh drinking water, and appropriate sleeping accommodations such as mattresses, sheets and pillows, and in initiating, developing, implementing and maintaining the policies and practices that led to these deprivations, Defendants acted willfully and wantonly.

**<u>ANSWER:</u>**   Defendants deny the allegations of this paragraph.

WHEREFORE, Defendants request that this Court enter judgment in their favor and against Plaintiff, deny any recovery of any sums by or on behalf of Plaintiff, and grant Defendant such other relief as this Court deems just.

## AFFIRMATIVE DEFENSES

<u>First Affirmative Defense</u>
Qualified Immunity

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Sheriff Kelley in his individual capacity has immunity from Plaintiff's federal claims because a reasonable officer in his position would have believed his or her actions were lawful based on the information known and clearly established law.

<u>Second Affirmative Defense</u>
Prison Litigation Reform Act

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Plaintiff's claims are subject to the Prison Litigation Reform Act, 42 U.S.C. §1997e, and the requirements and limitations imposed by that statute including but not limited to exhaustion of remedies, to the extent Plaintiff or any putative class member was a prisoner within the meaning of that statute at the time this action was filed.

<u>Third Affirmative Defense</u>
Immunity Where Employee Not Liable

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Will County and the Sheriff Kelley in his official capacity have immunity from Plaintiff's state law claims pursuant to 745 ILCS 10/2-109, because none of their employees is liable.

Fourth Affirmative Defense
Immunity for Discretionary or Policy Decisions

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Sheriff Kelley in his individual capacity has immunity from Plaintiff's state law claims pursuant to 745 ILCS 10/2-201, because he was a public employee serving in a position involving either the determination of policy or the exercise of discretion and his acts or omissions were made in determining policy while exercising discretion.

Fifth Affirmative Defense
Immunity for Execution or Enforcement of Law

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Sheriff Kelley in his individual capacity has immunity from Plaintiff's state law claims pursuant to 745 ILCS 10/2-202, because he was a public employee executing or enforcing the law and none of his acts or omissions constituted willful and wanton conduct.

Sixth Affirmative Defense
Immunity from Acts or Omissions of Other Persons

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Sheriff Kelley in his individual capacity has immunity from Plaintiff's state law claims pursuant to 745 ILCS 10/2-204, for any injury that was caused by the act or omission of another person.

<u>Seventh Affirmative Defense</u>
Immunity from Failing to Provide Jail Facilities

In further response to the Complaint, and without waiving any of the responses in the foregoing Answer, Defendants have immunity from Plaintiff's state law claims pursuant to 745 ILCS 10/4-103, for any injury caused by a failure to provide sufficient equipment, personnel, supervision or facilities at the Will County Adult Detention Facility.

## AMENDMENTS

Defendants specifically reserve the right to amend their answer by adding or modifying defenses as additional facts are obtained through further investigation and discovery.

## JURY DEMAND

Defendants hereby demand a trial by jury.

Respectfully submitted,

COUNTY OF WILL and MIKE KELLEY

By: _____
One of their attorneys

Martin W. McManaman
Kevin J. Clancy
Lowis & Gellen LLP
175. W. Jackson Blvd. Ste. 950
Chicago, IL 60604
(312) 364-2500
martym@lowis-gellen.com
kclancy@lowis-gellen.com

26

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on November 13, 2018, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing all counsel of record and parties in this case.


_Kevin Jellaney_