# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREA DUNN, on behalf of herself and all other similarly situated individuals, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 18 C 6304<br>) |
| COUNTY OF WILL and MIKE KELLEY, Sheriff of Will County, individually and in his official capacity, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant County of Will ("County") and Mike Kelley's ("Kelley") (collectively, "Defendants") partial motion to dismiss Plaintiff Andrea Dunn's ("Dunn") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Dunn's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

On Saturday, September 16, 2017 at approximately 3:50 a.m., Dunn, an Illinois citizen, was arrested by Bolingbrook police officers without an arrest warrant. The officers initially took Dunn to the Bolingbrook police station but transferred her to the Will County Adult Detention Facility ("ADF") shortly thereafter. Dunn arrived at the ADF at approximately 5:00 a.m. and was officially booked at 5:19 a.m. She was processed, searched, and placed in a holding cell.

Dunn's cell was approximately 90 square feet with a concrete floor, a concrete bench that could fit two to three people, and a toilet which was partially hidden by a three-foot wall. Dunn shared the cell with four other women until Monday, September 18, 2017, when officers took the women to a probable-cause hearing more than 48 hours after their booking.

While in holding, Dunn was not provided a toothbrush or toothpaste, nor was she given the opportunity to shower or use soap. She was required to use the bathroom in the holding cell in the presence of her cellmates and in the view of ADF personnel. When Dunn requested a sanitary napkin from a male officer, he "threateningly told Dunn to 'sit the fuck down and shut the fuck up.'"

During Dunn's detention, she did not eat the provided food. One of her cellmates "suffered violent diarrhea from the food she was provided," and the cellmate was allowed to use the bathroom only in the shared holding cell toilet. These events "sickened Dunn and scared her from eating any of the food" available. Dunn and her cellmates were not provided with water between meals.

Dunn was allowed to sleep only in the holding cell, and she was not provided with a mattress, pillow, or sheets. She unsuccessfully attempted to sleep on the concrete floor and bench. As a result, Dunn attended her probable-cause hearing after being deprived of sleep for over 72 hours.

Dunn's probable-cause hearing occurred at 1:30 p.m. on the Monday following her arrest, which was "over 57 hours from the time of her arrest, over 56 hours from the time she arrived at the ADF, and over 55 hours from the time she was officially processed at the ADF." The charges against Dunn were ultimately dismissed.

Dunn alleges that her experiences are not unique, both with respect to the length of her detention prior to receiving a probable-cause hearing and the conditions of her confinement. Regarding the length of detention, Dunn asserts that Kelley, the duly elected Sheriff of Will County, has a policy which "requires that persons arrested and arriving at the ADF after 5[:00] a.m. are not taken to that day's probable-cause hearings that take place at 1:30 p.m., but are instead unreasonably detained until the next day's probable-cause hearings." Those arrested and arriving at the ADF after 5:00 a.m. on a Saturday "must wait until Monday at 1:30 p.m. for a probable-cause hearing." The County, a local government entity within the State of Illinois, does not offer probable-cause hearings on Sundays.

Regarding the conditions of her confinement, Dunn asserts that Defendants failed to maintain a policy "requiring the provision of minimally appropriate sleeping accommodations, …minimally appropriate hygiene, including the provision of sanitary

3

napkins, toothbrushes or toothpaste, the availability of showers, soap, or privacy while urinating or defecating." As a result, "Defendants have a *de facto* policy of actively depriving these detainees of even minimal features of a civilized society."

Based on these events, Dunn filed a complaint on September 14, 2018 against Defendants on behalf of herself and four subclasses of individuals. Proposed Class One consists of "all detainees awaiting probable-cause determinations detained in the ADF overnight at any time." Proposed Class Two includes "all persons arrested without an arrest warrant and detained by Defendants in excess of 48 hours without a judicial determination of probable cause." Proposed Class Three is made up of "all persons arrested without an arrest warrant and detained by Defendants for a total time in excess of 36 hours without a judicial determination of probable cause." Proposed Class Four consists of "all persons arrested without an arrest warrant and detained by Defendants for a total time in excess of 24 hours without a judicial determination of probable cause."

On behalf of Proposed Class One, Dunn alleges Count I for unreasonable seizure due to the conditions of confinement in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. On behalf of Proposed Class Two, Dunn alleges Count II for unreasonable seizure due to the lack of a prompt probable-cause hearing in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. On behalf of Proposed Class

4

Three, Dunn alleges Count III[1] pursuant to 42 U.S.C. § 1983 for unreasonable seizure due to the length of detention given the conditions of confinement, which she alleges violates the Fourth Amendment. Dunn makes the same allegations in Count IV on behalf of Proposed Class Four. Count V alleges supervisory liability against Kelley pursuant to 42 U.S.C. § 1983. Counts VI and VII assert state law claims against Defendants for willfully and wantonly practicing unreasonable detention and maintaining unreasonable conditions of confinement, respectively.

On November 13, 2018, Defendants filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). They seek to dismiss Counts III, IV, VI, and VII as to all Defendants, and all counts as to the County.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative

---

[1] In the original complaint, Dunn alleged Count III on behalf of Proposed Classes Three and Four. However, due to confusion in the pleadings, Dunn moved for leave to amend the complaint to allege a separate cause of action for each proposed class, to which Defendants agreed. The Court granted leave to amend on April 11, 2019, and Dunn filed her first amended complaint on April 16, 2019. Defendants' motion to dismiss refers to the count numbers in the original pleading, but as agreed, the Court will consider its arguments with respect to the count numbers in the amended complaint.

5

level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

Defendants urge the Court to dismiss Counts III and IV of the amended complaint because "detention for less than 48 hours before a probable-cause hearing is presumptively reasonable as a matter of law."  Defendants seek dismissal of Counts VI and VII because they are immune under state law.  Finally, they seek dismissal of the County as to all counts because the County "may only be a nominal Defendant for purposes of indemnification."  The Court addresses each argument in turn.

**A. Reasonableness of Detention for Less Than 48 Hours**

"To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975).  The need for a probable-cause determination "increases

significantly" once a person is taken into custody without an arrest warrant. *Id.* at 114. Accordingly, the Supreme Court has determined that a state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id*. at 125.

Given the varied interpretations of "promptness," the Supreme Court clarified that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). This 48-hour reasonableness presumption has been repeatedly affirmed by the Seventh Circuit and this Court. *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) ("…detentions lasting less than 48 hours are presumptively lawful and cannot be challenged on the basis of the timespan alone."); *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014) ("Probable cause determinations made within 48 hours of arrest are presumptively prompt."); *Salgado v. Melvin*, 2018 WL 637837 (N.D. Ill. 2018) ("A delay of 48 hours or less between arrest and probable cause determination is presumed constitutional….").

However, the presumption of reasonableness can be overcome. A pre-hearing detention for less than 48 hours "may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *McLaughlin*, 500 U.S. at 56. Dunn attempts to rebut the presumption

7

of reasonableness by claiming that the conditions of confinement at the ADF make a pre-hearing detention greater than 24 or 36 hours unreasonable. However, this hybrid claim misses the mark because the touchstone of reasonableness is the motivation for delay.

Given that promptness was the chief concern addressed by *Gerstein* and *McLaughlin*, the Supreme Court noted that the "unreasonable delay" of a probable-cause hearing could violate *Gerstein*, offering examples like "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56. Following this guidance, this Court has only found detentions of less than 48 hours to be unreasonable if the probable-cause hearing was illegitimately delayed. For example, in *Andersen*, the Court held that a mother's hearing was unreasonably delayed when she was detained for 24 hours so that her ex-husband, a friend of the officers involved, could take their children to a football game without her interference. *Andersen v. Village of Glenview*, 2018 WL 6192171 (N.D. Ill. 2018).

Furthermore, this Court has rejected *Gerstein* challenges pled in the same detention-plus-conditions fashion as Dunn's complaint. For instance, in *Brooks*, the defendant was detained for 18 hours prior to a probable-cause hearing, eight of which he spent handcuffed to a bench. *Brooks v. City of Chicago*, 2017 WL 1163881 (N.D. Ill. 2017). Although the defendant's conditions of confinement claim survived summary judgment, his hybrid *Gerstein* claim failed as a matter of law because there

8

was "no evidence that administrative steps associated with [the defendant's] arrest were unreasonably delayed…nor [was] there any contention that [the officers] maintained any post-arrest ill-will toward [the defendant] and delayed his hearing for the sake of delay." *Id.* at *5. Therefore, problematic conditions of confinement do not suffice to get out from underneath *Gerstein*'s reasonableness presumption. Given that Dunn's hybrid *Gerstein* claims run counter to the decisions of this Court and the Supreme Court, Counts III and IV of the amended complaint are dismissed.

**B. Immunity Under State Law**

In Counts VI and VII, Dunn alleges that Defendants violated state law by willfully and wantonly developing and maintaining policies that resulted in unreasonable periods of pre-hearing detention and unreasonable conditions of confinement, respectively. Defendants seek dismissal of these counts because they are immune under state law.

*i. Illinois Tort Immunity Act Section 2-201*

According to Section 2-201 of the Tort Immunity Act, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. To claim immunity under the act, "the public official or employee must show that the injury resulted from an act or omission involving *both* an exercise of discretion and a policy decision." *Black v. Dart*, 2015 IL App (1st) 140402, at ¶ 16. A discretionary act is one

9

that is "unique to the particular public office at issue; as opposed to ministerial duties which are dictated by regulations or other legal authority." *Id.* A policy decision is a choice "which requires the official to balance competing interests for the time and resources of his department." *Id.*

The timing of probable-cause hearings meets these criteria because there are no regulations that set what dates and times such hearings need to be offered. Instead, that decision is left to the state courts and followed by the county sheriff. Moreover, the scheduling of such hearings necessarily involves competing interests for time and resources because both courts and sheriff's offices have finite resources and must weigh how to best utilize them. Accordingly, Defendants are immune under Section 2-201 from claims regarding policies that resulted in excessive detentions.

Defendants' policy decisions concerning conditions of confinement also meet the *Black* criteria to establish immunity under the Tort Immunity Act. First, determining this policy is a discretionary act because there are no regulations that dictate what constitutes proper conditions for facilities like the ADF. Dunn asserts that these decisions are actually ministerial because they are governed by Section 720.60 of the Illinois Administrative Code. However, as Defendants correctly note, that section only applies to facilities operated by the municipal police department, Ill. Admin. Code § 720.05, but the ADF is not a municipal police department. 55 ILCS 5/3-6017. Consequently, the decisions are left to the sheriff's discretion. Furthermore, the sheriff must determine how to distribute finite resources when determining what provisions to

afford detainees. Therefore, Defendants are immune under Section 2-201 from claims regarding policies that resulted in unreasonable conditions of confinement. Accordingly, the Court dismisses Counts VI and VII from the amended complaint.

This conclusion is not altered based on Dunn's assertions that Defendants' conduct was willful and wanton. Under the Tort Immunity Act, willful and wanton conduct is still granted immunity. *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 195 (1997) ("The appellate court reversed, holding that section 2-201 does not contain an exception for willful and wanton misconduct. We agree with the appellate court.").

*ii. Illinois Tort Immunity Act Section 4-103*

According to Section 4-103 of the Tort Immunity Act, "[n]either a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein." 745 ILCS 10/4-103. Both the Seventh Circuit and this Court have held that this provision shields county sheriffs from state tort liability. *See Schneider v. County of Will*, 528 Fed. Appx. 590 (7th Cir. 2013) (affirming dismissal of state law tort claim against sheriff for holding detainee ten days after he should have been released); *Kelderhouse v. Fox*, 2006 WL 2560855, at *4 (N.D. Ill. 2006) ("Section 4-103 appears to provide both county sheriff and public employees with absolute immunity should they fail to sufficiently supervise the jail or inspect prisoners.") This immunity applies regardless of whether the alleged conduct was willful and wanton. *Jefferson v. Sheahan*, 279 Ill. App. 3d 74, 77 (1st Dist. 1996)

11

("Section 4-103 does not provide an exception for conduct found to be willful and wanton…."). Given that Dunn's state tort claims are grounded in allegedly inadequate conditions at the ADF, Defendants are entitled to immunity under Section 4-103. Accordingly, Count VII of the amended complaint is dismissed.

**C. Scope of the County's Role as a Defendant**

Finally, Dunn has raised substantive allegations against the County for its role in "operat[ing], maintain[ing], and manag[ing] the ADF, and develop[ing], institut[ing], and maintain[ing] written and unwritten policies and practices regarding the detention of warrantless arrestees awaiting probable-cause determinations." However, Defendants stress that "[c]ontrolling precedent squarely forecloses Plaintiff's theory that the County may be liable because it allegedly directed the Sheriff's operation of the ADF." The Court agrees with this assertion.

"The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners." *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). Moreover, "policies concerning jail operations are solely under the supervision of the Sheriff as an independently-elected constitutional officer." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir. 2000) (internal quotation marks omitted). Therefore, the County has no control over the policies promulgated and maintained at the ADF, and as such, cannot be held liable for their results. *Ryan v. County of DuPage*, 45 F.3d 1090 (7th Cir. 1995) ("It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials

not subject to the control of the county."); *Thompson*, 882 F.2d at 1188 (affirming summary judgment grant in favor of county because they could not be found liable for violations of Section 1983).

However, the County remains a necessary party to this lawsuit as an indemnifier. "A County in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk or court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003). Accordingly, the Court grants Defendants' motion to dismiss the County as a defendant other than for indemnification purposes.

## **CONCLUSION**

For the aforementioned reasons, the Court grants Defendants' motion. It is so ordered.

Dated: 05/2/2019

_____

Charles P. Kocoras
United States District Judge