**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **ANDREA DUNN, on behalf of herself and all others similarly situated,**<br><br>Plaintiff;<br><br>**v.**<br><br>**COUNTY OF WILL and MIKE KELLEY, Sheriff of Will County, individually and in his official capacity.**<br><br>Defendants. | Case No. 18 CV 6304<br><br>Hon. Charles P. Kocoras<br><br>Hon. Young B. Kim |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Andrea Dunn, individually and on behalf of a class of others similarly situated, respectfully submits this joint motion and memorandum of law in support of her motion for preliminary approval of the attached class-action settlement. Exhibit 1, Settlement Agreement. Plaintiff requests that the Court enter an order that, among other things:

(1) preliminarily finds that the settlement is fair to the class;

(2) certifies two proposed Settlement Classes under Rule 23;

(3) approves sending notice to the class members per the proposed Notice Plan; and

(4) sets a date for final approval of the Settlement Agreement on or after May 15, 2020.

## INTRODUCTION

After months of protracted and contentious negotiations with the assistance and supervision of Magistrate Judge Kim, the parties have finally reached a settlement. That settlement calls for significant monetary relief for affected Class members and important procedural changes at the Will County Adult Detention Facility that will help ensure detainees' constitutional rights will not be violated in the future. Specifically, the Defendants will pay $2 million to fund a settlement fund, well within reasonable parameters established by settlements in cases alleging similar constitutional violations. Furthermore, the Will County Sheriff will change its policy manual and begin providing mattresses in each holding cell, and hygiene kits (that include soap, toothpaste, and a toothbrush), to booking cell detainees. Moreover, the Will County state court will provide Sunday probable-cause hearings (which it has now agreed to do) to all detainees whose Fourth Amendment rights might be violated otherwise. Plaintiff and Class Counsel highly recommend this settlement as being in the best interest of the class and move the Court for preliminary approval of the settlement.

## FACTS

**Procedural History**

Plaintiff filed this case in September 2018, seeking to represent multiple classes of persons detained at the Will County Adult Detention Facility ("the jail"). Dkt 1. Generally speaking, the classes were divided into: (1) individuals arrested without a warrant and held for various periods of time without a probable-cause hearing, and (2) individuals held in the jail overnight in alleged unconstitutional conditions of confinement in the holding-cell area. *Id*. at ¶¶ 32-56.

In response to the initial complaint, the Defendants moved to dismiss certain allegations and claims, while answering others. Dkt. 15 & 17. This Court granted Defendants motion to dismiss certain allegations on May 2, 2019. Dkt. 32. In the meantime, the parties exchanged initial disclosures and the Plaintiff deposed Dave Adams, a Rule 30(b)(6) witness for the Will County Sherriff's office, regarding: (1) the conditions of confinement at the ADF and (2) the procedures and considerations used by the Sherriff's department to admit, place, and release detainees arrested without a warrant and awaiting a probable cause hearing.

Plaintiff moved for class certification on April 26, 2019, and subsequently amended that motion. Dkt. 30 & 36. The Court then referred this matter to Magistrate Judge Kim for settlement discussions in May 2019. Dkt. 39. The parties held multiple negotiation sessions with Magistrate Judge Kim, in conjunction with further discovery responses and party-to-party negotiation. Finally, after six months of adversarial and protracted negotiations and settlement drafts, the parties agreed to the Settlement Agreement proposed here on December 2, 2019. Ex. 1.

One of the proposed terms of the Settlement Agreement was further confirmatory discovery. Ex. 1 at ¶¶ 26-27. Plaintiff used that provision to validate the class size of each proposed settlement class by further investigating the raw data related to each arrest, how it was compiled, and how it was maintained. This culminated in a second Rule 30(b)(6) deposition of the Will County Sheriff's office, this time regarding these issues.

**The Proposed Settlement Agreement**

The significant and relevant terms of the Settlement Agreement are as follows:

**A.        The Settlement Classes**

The two proposed settlement classes are defined as follows:

Settlement Class I is defined as:

> All persons detained at the Will County Adult Detention Facility between September 14, 2016 and the date of execution of this Agreement, and who were detained in a booking cell for more than 24 hours or who were detained in a booking cell throughout the period of 10:00 p.m. on one day through 6:00 a.m. the following day.

Ex. 1 at ¶ 10(a). There are approximately 10,500 members of this class.

Settlement Class II is defined as:

> All persons detained at the Will County Adult Detention Facility between September 14, 2016 and the date of execution of this Agreement, who were arrested without an arrest warrant or other judicial process, and who were not released within 48 hours of their arrest or who did not receive a judicial determination of probable cause within 48 hours of their arrest.

Ex. 1 at ¶ 10(b). There are approximately 400 members of this class.

**B.        Settlement funds and plan of allocation**

The proposed Settlement Agreement creates a Settlement Fund of $2 million to pay compensation to class members, administer the fund, pay notice costs, and pay attorneys' fees and costs. There will be no reversion of any funds to Defendants. Defendants will deposit $100,000 into the fund within 30 days of this Court granting preliminary approval. This amount will be used to fund notice and settlement-administration costs. Defendants will deposit the remaining amounts within 30 days of the entry of the Final Approval order.

Plaintiff proposes dividing the fund – net of notice costs, administration, incentive award, attorney's fees and expenses, and other Court-approved disbursements – into two sub-funds available to pay claims. Assuming expected notice and administration costs are incurred and a typical fee of 33% is awarded, then, approximately $800,000 would be distributed to Class I and $400,000 distributed to Class II. Because of the method of distribution, it makes the most sense to address Class II's plan of allocation first.

There are approximately 400 members of Class II, those individuals detained in excess of 48 hours without a probable-cause hearing. If all members claimed, each would receive $990, a significant sum. Should the claims rate be low, however (10% claims rates are not uncommon, although Class Counsel will work with the Settlement Administrator to hopefully generate a much higher return than that), Class Counsel proposes a $5,000 cap per Class II member. (Actually, all Class II members are also, by definition, Class I members and stand to be the highest paid members of Class I as well. So each Class II member would receive more than that $5,000.) To the extent the claims rate dips below approximately 20%, then, any excess monies from the Class II set-aside, would be added to Class I's set-aside and used to pay those Class members more.

Why? Because Class I, the conditions of confinement class, is far larger. There are approximately 10,000 members of Class I and so these class members will receive far less than those in Class II. For Class I, Class Counsel proposes a plan of allocation that pays class members proportionally based on (1) how long they spent in the jail and (2) when they were in the jail. With respect to the first factor, the longer a class member was held in the allegedly unconstitutional conditions, the greater their proposed recovery. This makes sense because the

longer one was exposed to the conditions, the greater their damages. The second factor takes into account that the Sheriff's office began issuing hygiene kits (soap, toothbrushes, toothpaste, and sanitary napkins) starting on May 17, 2019 in response to this lawsuit. This alleviated part, but not all, of the conditions-of-confinement claims. But members of Class I who were detained in the ADF from May 17, 2019 to December 2, 2019, no doubt were held under better conditions–and therefore less damages–than other members of Class I. In short, this plan provides the greatest compensation to those who spent the longest time, under the respectively worse conditions.

Members of Class II are automatically members of Class I. Class members who were arrested and detained multiple times during the class period may receive only one payment from each fund. For example, if a class member on one occasion meets the requirements of Class I, but not Class II and on a separate occasion meets the requirements of both Class I and Class II, the claimant will receive payment for both Class I and Class II. Unlike Class II, there is no cap on Class I claims, assuring virtually all of the net settlement fund (minus attorneys' fees, expenses, and administration costs) will be distributed to class members in the first disbursement.

### C.     Non-monetary compensation

In addition to monetary compensation, the Settlement Agreement provides important and meaningful non-monetary compensation in the form of policy changes and monitoring at the jail. *See*, *e.g.*, Ex. 1-B at ¶¶ G-K. For example, as a result of this suit and as insisted upon by Plaintiff and her Class Counsel as a condition precedent of any settlement, the state court sitting in Will County will create and enforce a circuit court administrative rule that requires all warrantless arrestees to receive a judicial determination of the probable cause for their arrest

6

within 48 hours of that arrest, barring exigent circumstances or an emergency. Ex. at ¶ 18. Prior to this suit, no such order existed and the court did not monitor this issue.

In addition, the Sheriff's Office will establish and implement the Policies and Procedures set forth in Exhibit A, and to amend the WCADF Inmate Handbook. Ex. 1-A. These changes provide real, substantive protections to future detainees at the jail, providing for: (1) hygiene kits (toothbrush, toothpaste, soap, towel, and sanitary napkins), (2) a mattress and blanket, (3) showers for those held for more than 24 hours, and (4) dimming of cell lights from 10 pm to 6 am. *Id.*

Further, Magistrate Judge Young B. Kim, with the assistance of the parties, shall act as a monitor ("Monitor") concerning compliance with this Settlement Agreement. Ex. 1 at ¶¶ 20-24. He shall receive and analyze information regarding the Sheriff's Office's compliance with the non-monetary terms of the Settlement Agreement, assess and make findings regarding such compliance, and enter appropriate orders to ensure both compliance and adequate monitoring of compliance. Beginning 90 days following Final Approval, and every 90 days thereafter, the Sheriff's Office shall provide the Monitor and Class Counsel a written report ("Quarterly Report"), which shall include the status of implementation of each of the non-monetary provisions of this Settlement Agreement. Ex. 1 at ¶ 21. The Quarterly Reports shall include the following information:

a.   the number of warrantless arrestees detained at the jail, since the date of Final Approval or since the date of the last Quarterly Report (whichever is later), who were not afforded a probable-cause hearing within 48 hours of the time of arrest, including the names of any such arrestees, dates and times of arrest, detention, and hearing, including specific circumstances that led to each such incident;

b.   the status of the facility modifications and provision of bedding as set forth in the Agreement;

     c.     the status of the modification of existing policies and procedures and adoption of new policies and procedures as set forth in the Agreement, copies of which shall be provided to the Monitor and to Class Counsel; and

     d.     the status of any rules changes by the Circuit Court relating to the timing or schedule for initial court appearances, copies of which shall be provided to the Monitor and to Class Counsel.

**E.    Opt-outs and objections**

Settlement Class members will have 60 days from the publication-notice date to request exclusion from the Settlement Classes or to file an objection to the Settlement Agreement. Ex. 1 at ¶ 30.

**F.    Release of claims**

The Settlement Agreement also provides that all members of the Settlement Classes who have not properly or timely excluded themselves from the Settlement Classes will release the Defendants from any and all claims, demands, rights, causes of action, compensatory and punitive damages, attorneys' fees and costs arising out of or in any way related to the allegations raised in this case. Ex. 1 at ¶ 25.

**G.    Named plaintiff incentive award and attorneys' fees**

The settlement allows for the Named Plaintiff to request an incentive award of up to $25,000 in cash, subject to the Court's approval, to be paid from the Settlement Administration Fund. Ex. 1 at ¶ 16. The Settlement Agreement further provides that Class Counsel may petition the Court for an award of their actual costs incurred in this litigation in addition to a fee of up to 33% of the Settlement Fund. *Id.* at ¶ 15.

## ARGUMENT

**I.   The Court should preliminarily approve the Settlement Agreement because it is fair, reasonable, and adequate.**

After engaging in lengthy and contentious settlement negotiations with Magistrate Judge Kim for three-and-a-half months, the parties have produced a settlement that both provides substantial financial relief to thousands of affected former Will County jail detainees and protects future detainees from violation of their Fourth Amendment rights to prompt judicial determination of probable cause for arrests and reasonable conditions of confinement at the jail. Accordingly, the proposed Settlement Agreement provides a reasonable and fair resolution of the claims alleged in the Complaint.

To settle a class action under Rule 23 generally requires two-steps of judicial review at the trial-court level. First, the parties present their agreement to the court for preliminary approval while at the same time seeking certification of the settlement class(es). *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588–89 (N.D. Ill. 2016). Second, at a later date, the parties will request the court finally approve the Settlement Agreement, at which time the court holds a fairness hearing to determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). If the district court is satisfied that the settlement meets these criteria, it grants final approval of the settlement, binding the defendant and all class members to the terms of the settlement.

At the current stage, though, the standard is actually lower; the Court must only determine whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982). The purpose of this inquiry "is to ascertain whether there is any reason to notify the class members of the proposed settlement and

to proceed with a fairness hearing." *Id.* Importantly, the Court is not resolving the merits now, *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); instead, it performs a summary review of the questions it will review at a final fairness hearing, including:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer;
>
> (2) the complexity, length, and expense of further litigation;
>
> (3) the opinion of competent counsel; and
>
> (4) the stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, at *1 (ND. Ill. Jan. 18, 2006) (analyzing the above factors for final approval of a class action settlement). As argued below, each of the relevant factors supports the conclusion that this Settlement Agreement is within the "range of possible" agreements that could be approved by this Court.

### A. The $2-million-settlement amount and non-monetary relief strongly supports the reasonableness of the Settlement Agreement in light of the uncertainty of damages in this case.

The strengths and weaknesses of Plaintiff's case are fairly and reasonably balanced with the settlement offer. While it is true that Plaintiff believes she has a strong case on liability regarding her alleged constitutional violations, there is simply no telling what damages a jury might award for them. Therefore, in the aggregate, a $2-million-dollar settlement figure is certainly substantial and within the realm of a reasonable settlement given the uncertainty of a jury trial with classes of arrested persons as plaintiffs.

10

Comparing the settlement here to other settlement of similar claims also supports a reasonableness finding. Plaintiff has identified five cases in the Seventh Circuit that settled similar, although not identical, constitutional violations:

- *Dunn v. City of Chicago*, No. 04-CV-6804 (N.D. Ill.) (awarding up to $90 per overnight detention without bedding);

- *Flood v. Dominguez*, No. 08-CV-153 (N.D. Ind.) (awarding approximately $100 for being held 24 hours for conditions at the jail including no bedding);

- *Wright v. Rodden*, No. 14-CV-27 (S.D. Ind.)($19 to $22 per hour for each hour over 48 hours);

- *Bickel v. Sheriff of Whitley*, 08-CV-102 (N.D. Ind.)($43.83 per hour for each hour over 48 hours); and

- *Myatt v. Allen County*, 10-CV-64 (N.D. Ind.)($200 for individuals detained between 48 and 60 hours).

This settlement will provide recoveries to class members in the high range of these comparable settlements. For example, assuming a very high 50% claims rate (the percentage of actual class members who respond with valid claims) and applying the proposed plan of allocation here, each member of Class I would average a recovery of $160 and each member of Class II would recover $1,932.

### B. Without the settlement, the parties would need to engage in lengthy, costly, uncertain, and complex future litigation.

If the parties continued to litigate this Action, each side would expend considerable time and expense in prosecuting and defending her claims. While this case is now a year-and-a-half old, the parties have only begun discovery. Further depositions, document discovery, requests to admit and more would be required by both sides, likely extending litigation by another six months. No doubt both sides would file competing summary judgment motions, taking another

six months of briefing and court effort to decide the motions. Finally, the length and expense of a trial would be considerable given the complexity of the issues, proof of violations, and the policy and practices that led to the violations. At the end of this process, a randomly selected jury would render a verdict on the value of a constitutional right. And, while the right be free of unreasonable seizure by the government is important, it is difficult to determine its economic value. Given these facts, a settlement now is reasonable to avoid such an uncertain outcome after projected costly and time-consuming litigation.

### C. Class Counsel is competent, experienced, and whole-heartedly endorses the proposed Settlement Agreement.

Class Counsel supports the proposed Settlement Agreement as a fair and reasonable resolution of the action because it provides significant monetary compensation to Settlement Class Members. Counsel has reached this opinion after careful consideration of the strength of Plaintiff's case balanced with the risk and cost of further litigation. While Class Counsel continues to believe that the allegations here are serious, they are satisfied that the monetary relief here will adequately compensate the Classes and are proud of the non-monetary relief negotiated with Defendants.

Furthermore, Heffner Hurst has a wealth of experience litigating class cases across the nation. Dkt. 30-3. The Court should take note of their expertise and the fact that they have settled, administered, and developed notice plans for dozens of class cases as lead counsel and fully support this settlement and its proposed administration.

**D. The Settlement Agreement is the result of months of protracted negotiations supervised and mediated by an experienced and neutral federal magistrate judge.**

Magistrate Judge Kim mediated the negotiations between the parties and took an active and substantial role in helping develop some of the key terms. This additional fact also strongly supports approving the Settlement Agreement and finding, at this time, that it falls within a range of reasonable settlements of this litigation. *See* Manual for Complex Litigation, § 21.62, at 316 (listing the participation of a judge in the negotiations as one of the factors to consider in evaluating a proposed class action settlement). Indeed, Magistrate Judge Kim has agreed to act as a neutral monitor and arbiter of the Defendants' compliance with the settlement's non-monetary provisions, showing his belief that this settlement is a fair and reasonable one.

*****

In conclusion, the factors relevant to the Court's inquiry at the preliminary stage overwhelmingly support its preliminary approval of the proposed Settlement Agreement. The Settlement agreement is, at the very least, within the range of agreements that are fair, reasonable and adequate for these types of claims. The parties jointly seek the Court to issue an Order preliminarily approving the proposed Settlement Agreement.

**II. The proposed Settlement Classes meet all the requirements of Rule 23 and so the Court should certify them for settlement purposes.**

In evaluating class certification in the settlement context, the court should conduct "an independent class certification analysis," just as it would without a settlement proposal. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-C-2898, 09-C-2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011). So the court must determine if the proposed Class I and Class II satisfy Rule 23. Under Rule 23 (a), the Court must determine if each class satisfies the numerosity,

13

commonality, typicality, and adequacy-of-representation requirements. And under Rule 23(b)(3), whether common issues of law and fact predominate over individual issues. *See Driver v. Marion County Sheriff*, 859 F.3d 489, 490 (7th Cir. 2017). Here, all of the requirements of Rule 23(a) and (b)(3) are met.

### A. Each proposed subclass meets Rule 23(a)'s prerequisites for class certification—numerosity, commonality, typicality, and adequacy.

#### 1. Each proposed subclass is so numerous that joinder of all members is impracticable because there are at least 40 members in each group.

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Class I has approximately 10,000 members; Class II has approximately 400 members. Joinder is obviously not practicable with these numbers. *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009)(over 40 is clearly impracticable).

#### 2. Each proposed subclass has questions of fact and law common to each member.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Generally, the commonality prong requires only a "common nucleus of operative fact …." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010). The Supreme Court has explained that "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011). What matters, then, is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 564 U.S. at 350 (quotation marks omitted). And "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764

F.3d 750, 755–56 (7th Cir. 2014) (collecting cases detailing common questions but varying damage claims by individual members).

Here, Dunn alleges Defendants engaged in a common practice in holding detainees for unreasonable amounts of time in unreasonable conditions. These allegations are uniform across all class members. For Class I, Plaintiff alleges that, due to a policy within the Sheriff's office, detainees in ADF booking or holding cells were routinely denied (1) a meaningful ability to sleep (by not providing mattresses, sheets, pillows, and by keeping bright fluorescent lights on 24 hours a day in the booking cells), (Dkt. 29, Am. Complt., at ¶¶ 30, 35), and (2) adequate sanitary conditions and hygiene products (by not providing soap for handwashing even after defecation or urination, toothbrushes and toothpaste, private toilets, and sanitary napkins) (*Id*. at ¶¶ 25, 31, 35). Whether these detainees suffered these deprivations, and whether the Sheriff's office had a policy that caused the deprivations, are common issues of fact to all detainees. Whether these facts violated the Fourth Amendment's bar of an unreasonable seizure of a person or the Fourteenth Amendment's requirement of substantive due process in the holding of a person before trial are common issues of law. (Am. Complt. at ¶ 34).

For Class II, Plaintiff alleged that the Sheriff uniformly followed a practice of holding detainees awaiting probable-cause hearings for longer than 48 hours from Saturday to Monday. (Dkt. 17, Ans. at ¶ 11.) Whether that occurred is an issue of common fact and whether that practice violated the Fourth Amendment's bar of unreasonable seizures of a person is a common issue of law. (Am. Complt. at ¶ 40).

Both sets of common questions of law and fact for each proposed class, then, would certainly "drive the resolution of the litigation." *Wal–Mart*, 564 U.S. at 350. Indeed,

cases like as these, alleging Fourth Amendment violations against jailers, are routinely certified as class actions because the claims are typically common across all class members. *See, e.g., Bickel v. Sheriff of Whitley Cty.*, No. 1:08-CV-102-TS, 2010 WL 883654, at *4 (N.D. Ind. Mar. 5, 2010)(certifying class and finding commonality regarding claims of unreasonable length of detentions); *Flood*, 270 F.R.D. at 422 (certifying class for conditions of confinement similar to those here); *Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005)(certifying class for both unreasonable conditions and length of detention).

### 3. The claims of Andrea Dunn, proposed class representative for both classes, are typical of the claims of each class.

The typicality requirement of Rule 23(a)(3) is satisfied when "plaintiff's claim 'arises from the same ... practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Smith v. Dearborn Cty., Ind.*, 244 F.R.D. 512, 518 (S.D. Ind. 2007)(citing *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Dunn's claims are typical of the claims of each class member, in both classes. She was held in the same conditions and denied the same hygiene materials and sleeping conditions as every other class member who spent time in the ADF (Class I). And she was held over 48 hours prior to receiving a probable-cause hearing (Class II). Therefore, she may serve as the class representative for both classes, just as in *Keele v. Wexler*, No. 95-C-3483, 1996 WL 124452, at *2 (N.D. Ill. Mar. 19, 1996)(*aff'd*, 149 F.3d 589 (7th Cir. 1998)). There, this Court certified four classes and allowed a single plaintiff to represent them all. *Id*. As this Court stated, "[f]or purposes of a Rule 23 class, a plaintiff need only be a member of the class she seeks to represent." Id. On appeal, the Seventh Circuit affirmed. *Keele v. Wexler*, 149 F.3d 589, 593 (7th

Cir. 1998). In so doing, that court held that "so long as [plaintiff's] and the class members' injuries arose out of the same violative conduct, she may properly represent [the challenged subclasses.]" *Id.* at 593. Since Dunn's injuries arose out of the same alleged conduct as the rest of the members of each class, her claims are typical and she is an adequate representative for each class. *See*, *id.*

### 4. Andrea Dunn and proposed Class Counsel will fairly and adequately protect the interests of each subclass.

Next, Dunn must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis contains two parts: (1) the adequacy of the named plaintiff in representing the class, and (2) the adequacy of the proposed Class Counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

In order to be an adequate representative, the named Plaintiff must not have "antagonistic or conflicting claims." *Id.* Practically, the typicality and adequacy inquiries are linked: "typicality insures the class representative's claims resemble the class' claims to an extent that an adequate representation can be expected." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 429 (N.D. Ill. 2003) (internal citation omitted). As discussed in the previous section, Dunn's claims are the same as the rest of both classes—she, like every other member of each proposed class, was detained at the jail after a warrantless arrest and before a probable-cause hearing in unreasonable conditions and for an unreasonable length of time. There is no suggestion that any individual defenses or claims apply to her that would impede her ability to adequately represent the interests of all class members. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 724 (N.D. Ill. 2016).

17

Similarly, the firms of Heffner Hurst and the Law Office of Jordan Marsh should be appointed Class Counsel. Combined, the two firms have extensive experience in the substantive legal issues here and class-action litigation. Dkt. 36 at 13-14. And as this case and this very proposed settlement now demonstrate, they can (and have) vigorously and competently litigated the issues in this case. They are more than adequate.

**B. The proposed classes satisfy Rule 23(b)(3) because questions of both law and fact are common to all class members in each class and those questions predominate over any individual questions.**

After determining the proposed classes meet the requirements of Rule 23(a), the Court must find that the classes satisfy at least one prong of Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Here, both classes satisfy, and should be certified, under Rule 23(b)(3). That rule has two requirements. First, legal or factual questions common to class members must predominate over questions affecting only individual class members. Second, a class action must be superior to several (here, thousands) of individual suits in fairly and efficiently dealing with the litigation. F.R.C.P. 23(b).

In analyzing these two requirements—predominance and superiority—Rule 23(b)(3) asks the Court to analyze:

(A)    the class members' interest in individually controlling the prosecuting or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against members of the class;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

18

With respect to elements (A) and (B), as far as Dunn and her counsel know, no other claims have been filed regarding these issues despite their apparent long history. That makes sense, since conditions-of-confinement claims typically recover little in damages and so potential class members are unlikely to prosecute individual claims absent the cost-sharing efficiencies offered by a class action. *See Gentry v. Floyd County*, 313 F.R.D. 72, 81 (S.D. Ind. 2016); *Flood*, 270 F.R.D. at 422; *Dunn*, 231 F.R.D. at 377. Indeed, courts in this circuit routinely certify challenges to law enforcement's policy, procedures, and practices that arguably violate the 4th Amendment under Rule 23(b)(3). *See, e.g., Young v. County of Cook*, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007)("When a class challenged a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation."); *Vodak v. City of Chicago*, 2006 WL 1037151, at *11 (N.D. Ill. Apr. 17, 2006)(class challenging mass arrest under 4th Amendment certified); *Blihovde v. St. Croix Cty., Wis.*, 219 F.R.D. 607, 621 (W.D. Wis. 2003).

More specifically, claims involving unreasonably harsh conditions of confinement—for prisoners or pretrial detainees—and unreasonably lengthy detentions are tailormade for class treatment under Rule 23(b)(3). *Rhodes, Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988)(8th Amendment claims regarding conditions of confinement); *Driver v. Marion County Sheriff*, 859 F.3d 489, 490 (7th Cir. 2017)(reversing district court denial of class certification regarding class of pretrial detainees alleging unreasonably lengthy detentions under 4th Amendment); *Rahim v. Sheahan*, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001)(certifying class of pretrial detainees for challenges of conditions of confinement under 14th Amendment); *Gentry*, 313 F.R.D. at 81 (finding predominance of issues in a conditions of confinement claim); *Bickel*,

2010 WL 883654, at *8 ("The significant and common issue of whether the Sheriff's policy violates the constitution outweighs individualized damages issues, and the predominance requirement of Rule 23(b)(3) has been met.")

With respect to elements (C) and (D), courts typically focus on whether a class action in a particular case will achieve economies of time, effort, and expense. *See Suchanek*, 764 F.3d at 759. Here, certifying the class and subclasses will certainly save time, effort, and expense for all parties involved. Individual discovery for each and every plaintiff—there are hundreds or thousands here for each class—into liability issues alone would be a judicial nightmare. But class certification would "make it possible to determine whether Defendants follow the alleged polic[ies] or practice[s] and, if so, determine its legality in a single proceeding." *Bell v. Dart*, 2016 WL 337144, at *12 (N.D. Ill. Jan. 26, 2016)(finding superiority of class action in Fourth Amendment challenge ). So elements (C) and (D), above, also clearly favor class certification.

*****

In conclusion, since both Class I and Class II satisfy all the requirements of Rule 23 for certification, this Court should certify each as a Rule 23(b)(3) class, appoint Plaintiff Andrea Dunn as the class representative for each class, and the firms of Heffner Hurst and the Law Office of Jordan Marsh as Class Counsel for each class.

III.    **The proposed notice plan satisfies the requirements of due process and should be approved.**

If the Court preliminarily approves the Settlement, Class counsel must provide notice to the class "in a reasonable manner" so that the class members can raise any objections they may have or opt-out of the settlement. Fed. R. Civ. P. 23(e)(1). The Settlement Agreement provides a

Notice Plan that meets the law's requirement of the "best practicable, reasonably calculated under the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Philips Petroleum Co. v. Shutts*, 472 US. 797, 812 (1985).

Here, the proposed Notice Plan has been designed to reach as many potential class members accounting for the particular challenges of the represented population of individuals. Written notice will be sent to the address of record when the individual was booked into the ADF. For privacy, it will be a folded postcard containing the notice in Exhibit 2. Claims will be made through a website established by the Administrator. This reduces the cost of printing, mailing, and data entry which benefits the Class by increasing the amounts available for distribution. Claims can be made as soon as the notice is sent and until 60 days after final approval. The website, established by the Administrator,[1] shall include updates on the settlement and links to the Notice, the online claim form, and relevant pleadings and orders in this action. The website shall be maintained for at least 180 days after the expiration of the period for submission of claim forms.

---

[1] After receiving multiple bids for settlement and claims administration in this case from experienced vendors, Class Counsel have selected Strategic Claims Services ("SCS") and have proposed SCS to the Court as the Administrator in this case. SCS was established in 1999 and is one of the leading class action administrative firms in the United States. Ex. 4. SCS is nationally recognized by the courts and class-action law firms for its quality service and competitive pricing. SCS has administered over 500 class action settlements representing over $2 billion in settlement/judgment funds; processing of more than 3,000,000 claims; and mailed over 15 million claim and notice forms.  SCS is currently administering a similar settlement in the U.S.D.C. for the District of N.J. (*Haas v. Burlington County, et al.*, No. 08:1102). Heffner Hurst has worked with SCS previously and found them to be very responsive and responsible.

The Notice Plan also involves publishing notice in various print media. Notice, as seen in Exhibit 3, will appear in the following publications: (i) the Chicago Tribune, (2) the Herald-News, and (3) the Joliet Patch newspapers. If Class members wish to opt-out or object, they have 60 days to notify the Administrator, who will in turn notify the Court and the parties. Ex. 1 at ¶¶ 30-37. This Notice Plan satisfies the requirements of due process and apprises the Settlement Class members of their rights to submit a claim, to exclude themselves from the Settlement Agreement, and/or to file an objection.

## CONCLUSION

Given the reasons stated above, the Court should enter the proposed Order (Exhibit 5) granting the Plaintiff's motion and (1) preliminarily approving the proposed Settlement Agreement; (2) certifying the requested Class I and Class II and appointing Andrea Dunn as the class representative for both classes and Heffner Hurst and the Law Office of Jordan Marsh as Class Counsel; and (3) approving the proposed Notice to Class I and Class II with Strategic Claims Services appointed as the settlement Administrator.

Respectfully submitted,

/s/ Jordan Marsh
Jordan Marsh
**Law office of Jordan Marsh**
55 East Monroe, Suite 3800
Chicago, Illinois 60603
312.401.5510
jordan@jmarshlaw.com

/s/ Matthew T. Heffner
Matthew T. Heffner
**Heffner Hurst**
30 N. LaSalle, Suite 1210
Chicago, Illinois 60602
312.346.3466
mheffner@heffnerhurst.com